NOTICE
Decision filed 12/17/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200157-U

NO. 5-20-0157

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CAMILLA MORSE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 19-MR-33 |
| | ) | |
| CASEY'S GENERAL STORE, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the orders of the circuit court entering judgment in favor of petitioner for unpaid medical expenses and awarding petitioner attorney fees and costs pursuant to section 19(g) of the Workers' Compensation Act (820 ILCS 305/19(g) (West 2018)), where the court properly determined that respondent failed to tender full payment of the amount awarded to petitioner in a settlement agreement approved by the Illinois Workers' Compensation Commission.

¶ 2     Respondent, Casey's General Store (Casey's), through its agent Foresight Medical, LLC, d/b/a Paradigm Specialty Networks (Foresight), appeals the Randolph County circuit court's order entering judgment in favor of petitioner, Camilla Morse, pursuant to section 19(g) of the Workers' Compensation Act (Act) (820 ILCS 305/19(g)

1

(West 2018)), in the amount of $5206.72 for unpaid medical expenses owed under a settlement agreement that was approved by the Illinois Workers' Compensation Commission (Commission). Casey's also appeals the court's subsequent order awarding Morse attorney fees in the amount of $11,650 and costs in the amount of $1081.14. For the following reasons, we affirm.

¶ 3                                    I. Background

¶ 4     On November 20, 2015, Morse sustained an injury to her cervical spine while working for Casey's. She filed an application for adjustment of claim with the Commission pursuant to the Act (820 ILCS 305/1 *et seq*. (West 2014)), seeking benefits for her work-related injury.

¶ 5     On June 26, 2017, following a hearing held pursuant to section 19(b) of the Act (*id*. § 19(b)), the arbitrator issued a written decision. The arbitrator found that Morse sustained a compensable injury on November 20, 2015, and awarded her benefits under the Act, including temporary total disability benefits and medical expenses in the amount of $17,621.11. The arbitrator also ordered Casey's to pay for prospective medical treatment, including a decompression fusion surgery recommended by Morse's treating physician. Neither party sought review of the arbitrator's decision before the Commission.

¶ 6     On October 16, 2017, Morse underwent the recommended surgery at Frontenac Surgery and Spine Care Center (Frontenac). Prior to surgery, Morse signed a financial agreement with Frontenac, wherein she agreed to pay all sums due for the surgery at Frontenac's usual and customary charge. Morse further agreed that her insurer's failure to

2

make payment would not relieve her obligation to pay Frontenac. Shortly after Morse's surgery, Frontenac submitted a claim for reimbursement to Casey's third-party administrator, Cannon Cochran Management Services (CCMSI). The claim for reimbursement listed Frontenac's charges for Morse's surgery, including, *inter alia*, charges for four medical implants that totaled $24,190. In support of the implant charges, Frontenac attached the invoice it received from New Age Medical, a wholesale supplier of medical devices, for the four implants, which listed a total price of $12,095.

¶ 7 On November 17, 2017, CCMSI processed Frontenac's claim and issued partial reimbursement for the billed charges, including, *inter alia*, a partial payment of $9912.03 for the medical implants. CCMSI sent Frontenac an explanation of reimbursement, which provided reasons for the partial reimbursement of the billed charges and indicated the reimbursement was made according to the fee schedule provided in section 8.2 of the Act (*id*. § 8.2). The explanation of reimbursement also indicated that Foresight conducted a separate review of Frontenac's implant charges and made recommended reductions. Foresight issued a separate explanation of reimbursement, which provided reasons for the recommended reductions and indicated the review was conducted in accordance with the Act.

¶ 8 On December 18, 2017, Frontenac received the explanation of reimbursement documentation and noted disagreement with the partial payment for the medical implants. Specifically, Frontenac noted that it charged $24,190 for the implants but expected a reimbursement payment in the amount of $15,118.75 in a workers' compensation case. Frontenac also noted that the partial payment of $9912.03 left an outstanding balance of

3

$5206.72. Frontenac paid the New Age Medical invoice, which totaled $12,095, in full on January 8, 2018.

¶ 9   On September 18, 2018, the Commission approved a settlement agreement between Morse and Casey's, wherein the parties agreed to settle Morse's claim arising under the Act. The parties' settlement agreement was documented on a standardized form, titled "ILLINOIS WORKERS' COMPENSATION COMMISSION SETTLEMENT CONTRACT PETITION AND ORDER," and a separate document, titled "TERMS OF SETTLEMENT." In the "Medical Expenses" section of the agreement, a box was checked that indicated Casey's had paid all medical expenses, and no unpaid medical bills were listed on the space provided. The settlement agreement listed a total settlement amount of $44,000 and indicated that Morse would receive $32,284.06 after a $8800 deduction for attorney fees and a $2915.94 deduction for medical reports and x-rays. The first section of the settlement agreement declared that the settlement amount was "a compromise settlement of all claims, filed and unfiled, which were disputed as to all issues including but not limited to [Morse's] prior condition, accident, *** causal connection, temporary total disability, medical expenses, violation of Commission Rules as to filing of Applications for Adjustment of Claim, and permanency." The first section of the settlement agreement also provided that the parties mutually contributed to the drafting of the agreement.

¶ 10   The second section of the settlement agreement addressed the potential for future medical care and expenses associated with Morse's work-related injury. Casey's agreed to offer Morse "open medical rights" under section 8(a) of the Act (*id*. § 8(a)) for

4

reasonable, necessary, and causally related medical treatment "paid pursuant to the Medical Fee Schedule as set forth in the Act" but reserved the right to dispute and refuse medical treatment. The parties agreed that Morse's right to open medical rights would cease if Casey's exercised its right to fund a Medicare Set Aside (MSA). In a subsequent section of the agreement that addressed the administration of the MSA if funded by Casey's, the parties agreed that Casey's would have no responsibility for medical treatment incurred after contract approval. In the same section, Casey's agreed "to pay the previously incurred reasonable, necessary, and causally related medical expenses pursuant to the Medical Fee Schedule as set forth in the Act or by private agreement as long as those charges [were] submitted to [Casey's] prior to contract approval and the parties expressly agree[d] that [Casey's] liability for payment of medical expenses [was] limited to these charges." The settlement agreement was signed by both parties, and neither party sought review of the Commission's decision approving the settlement agreement.

¶ 11 On April 18, 2019, Morse filed an application for entry of judgment pursuant to section 19(g) of the Act. Morse alleged in the application that pursuant to the settlement agreement approved by the Commission, Casey's "agreed and was required to pay all medical bills according to the provisions of the Fee Schedule contained in Section 8.2 of [the Act]." Morse alleged that Casey's had refused to properly pay Frontenac's medical bill for the implants in the amount of $5206.72. Morse, citing section 8.2(a-1)(5) of the Act (*id*. § 8.2(a-1)(5)), further alleged that "implants shall be reimbursed at 25% above the net manufacturer's invoice price less rebates, plus actual reasonable and customary

5

shipping charges, whether or not the implant charge is submitted by a provider in conjunction with a bill for all other services associated with the implant, submitted by a provider on a separate claim form, submitted by a distributor, or submitted by the manufacturer of the implant." Morse requested that the circuit court enter a judgment against Casey's "in accordance with the order of [the Commission]" and "tax [Casey's] the reasonable costs and attorneys fees in the arbitration proceeding and in the instant cause."

¶ 12    In support of her section 19(g) application, Morse attached a certified copy of the settlement agreement and the affidavit of Laurie Thiemann, Frontenac's business office manager. Thiemann averred that she was "personally acquainted" with Frontenac's billing records for Morse's surgery. Thiemann attached five pages of billing records to her affidavit, which showed that Frontenac expected a reimbursement payment of $15,118.75 for the medical implants under the Act and received a payment of $9912.03, leaving a balance of $5206.72.

¶ 13   On June 13, 2019, an "attorney for Defendant/Respondent, specifically FORESIGHT MEDICAL LLC, which is the agent of [Casey's] insurance company," filed an entry of appearance and answer to Morse's section 19(g) application. In the answer, Foresight, acting on behalf of Casey's, admitted that Morse's surgery required the use of implants and that the settlement agreement required Casey's to pay all medical bills as set forth in section 8.2 of the Act. However, Foresight denied Morse's allegation that Casey's had "refused to properly pay [Frontenac's] charges for the implants used

during surgery in the amount of $5,206.72" and claimed that Casey's had "fully reimbursed Frontenac for the implants in question" according to the Act.

¶ 14 On June 14, 2019, Foresight filed a motion for summary judgment on Casey's behalf. Foresight alleged in the motion that the issue presented by Morse's section 19(g) application was "whether the guidelines for implant reimbursement require payment of the provider's cost plus 25% even if the medical provider paid five (5) times more for the implant than what it actually costs." Foresight argued that the Act required reimbursement of the " 'net manufacturer's invoice price,' not an unreasonably high cost paid by the provider." Foresight also argued that "the cost-plus reimbursement system imposes a duty on medical providers to acquire implants at a reasonable cost" and that Frontenac significantly overpaid for the implants at issue.

¶ 15 In support, Foresight attached the affidavit of Amanda Wheatley, Foresight's materials manager. Wheatley averred that she reviewed the New Age Medical invoice prices for the implants used in Morse's surgery, which totaled $12,095, and compiled comparable invoices for the same, or substantially similar, implants "based on date of service as well as geographic area, and vendor." Wheatley noted that the invoice Frontenac received from New Age Medical priced the Zavation 2-level 32 mm cervical plate at $2995, the Zavation self-drilling, 4.0 x 14 mm variable screws at $550 per screw, the SeaSpine Cambria 17 x 13 x 10 mm cage at $2100, and the 2.5cc i-Factor putty at $1600. Wheatley averred that the comparable invoices she found priced "the same" cervical plate at $660, "identical screws" at $245 per screw, "a substantially similar" SeaSpine cage at $800, and the same surgical putty at $1075. Wheatley attached three

7

comparable invoices to her affidavit: a New Age Medical invoice, dated April 7, 2017, billing a provider in Missouri $660 for a Zavation 2-level, 30 mm cervical plate and $245 (per unit) for Zavation self-drilling, 4.0 x 14 mm variable screws; a SeaSpine Sales LLC invoice, dated December 5, 2017, billing a provider in Boise, Idaho, $800 for a Cambria NM 17 x 13 x 9 mm cage implant; and a Cerapedics invoice, dated October 31, 2017, billing a provider in Atlanta, Georgia, $1075 for 2.5cc i-Factor putty. The medical provider's name was redacted from each invoice.

¶ 16   In its motion for summary judgment, Foresight argued that the lower prices reflected in the comparable invoices attached to Wheatley's affidavit were "evidence of the 'net manufacturer's invoice price.' " Foresight asserted that its "proof on the 'net manufacturer's invoice price' by means of comparable invoices [was] compelling," given that each invoice was from either "the same distributor (New Age Medical) or the manufacturer of the implant to a similarly situated medical provider at the similar time frame." Based on the comparable invoice prices, Foresight claimed that Casey's had paid the full amount owed for the implants. Thus, Foresight requested that the circuit court enter an order denying Morse's request for additional medical expenses, granting its motion for summary judgment, and dismissing Morse's section 19(g) application.

¶ 17   On July 12, 2019, Morse filed a response to Foresight's motion for summary judgment. Morse argued that the "net manufacturer's invoice price" was the price the medical provider paid for an item prior to any markup to the patient. Morse also argued that the invoices attached to Wheatley's affidavit pertained to implants from unrelated and unknown sources. According to Morse, Foresight failed to account for "the fact that

8

certain agreements may exist between New Age Medical and other providers that allow them to obtain surgical implants at prices below the manufacturer's invoice."

¶ 18    On July 25, 2019, the circuit court held a hearing on Foresight's motion for summary judgment. The court found that the parties presented conflicting evidence of the net manufacturer's price of the implants at issue. Thus, the court determined there was a disputed factual issue and denied Foresight's motion for summary judgment.

¶ 19    On November 25, 2019, the circuit court held an evidentiary hearing on Morse's section 19(g) application. At the outset of the hearing, the court expressed confusion regarding Foresight's role in the proceedings, given that Casey's was the only named defendant in the case. Foresight clarified that it was acting "as an agent on behalf of Casey's" and explained that "the insurance carrier for Casey's engaged Foresight to do a review of the medical bill specifically with regard to the implants." Foresight claimed the issue was "whether [Casey's], [Casey's] insurance carrier, reimbursed [Frontenac] according to the schedule." Morse's attorney disagreed, asserting that he represented Morse, not Frontenac, and that Morse would be responsible for the unpaid bill.

¶ 20    Morse then testified to the following on her own behalf. She sustained a work-related injury at Casey's and filed a claim for benefits under the Act. Morse underwent surgery at Frontenac as a result of her injury. She later agreed to settle her claim with Casey's. Morse identified the settlement agreement she signed and acknowledged the medical expenses section indicated that Casey's had paid all medical bills. Morse claimed that she first became aware of the unpaid bill from Frontenac when she received a call

from her attorney. Morse believed she was responsible for the unpaid bill but had not been asked to pay the bill as of the date of the hearing.

¶ 21    Neil Giffhorn, a workers' compensation defense attorney, testified to the following on Morse's behalf. Giffhorn was hired by CCMSI to represent Casey's in the underlying workers' compensation case. He explained that "Casey's is self-insured for workers' compensation benefits, so they contract with a firm, CCMSI, that basically acts as the adjuster, not an insurance company, but a similar situation, because the money is— Casey's, but it is administered by CCMSI and their employees." Giffhorn also explained that the legislature included the fee schedule in the Act as a cost-saving measure for employers, and that the Act requires reimbursement of the net invoice "plus 25 percent" for medical implants used during surgery. To his knowledge, there was no provision in the Act that required a medical provider to search different states for implants at the lowest cost.

¶ 22    On cross-examination, Giffhorn identified the settlement agreement and testified that he drafted the agreement in his office. Giffhorn testified that the arbitrator awarded Morse prospective medical treatment consistent with the recommendation of her doctor and did not address the issue of implant reimbursement. Giffhorn was unaware of any issues relating to the medical bills from Frontenac when he drafted the settlement agreement. When asked about the section of the agreement that indicated all medical bills had been paid, Giffhorn responded, "CCMSI had told me that they had processed or were processing the bills, and that's a pretty standard procedure, that when we enter into a settlement contract, it takes a while for the bills to get processed." Giffhorn explained that

parties commonly "proceed with getting the contracts approved" during bill processing "under the assumption that we have paid or will pay." Giffhorn was not involved in the billing process and denied seeing any documentation relating to the medical bill at issue.

¶ 23 Thiemann then testified to the following on Morse's behalf. Thiemann had worked at Frontenac for over nine years. As business office manager, she supervised the business and billing offices. When the staff notified Thiemann of a billing issue, she attempted "to get proper payment." Thiemann was familiar with Frontenac's customary charges and the Act's fee schedule so she could "ensure that reimbursement [was] made properly on our claims." Thiemann became involved with the billing for Morse's surgery when "the implants were not paid per the fee schedule." A Frontenac employee, commonly referred to as a "payment poster," notified Thiemann of the issue. The payment poster had extensive experience with Frontenac's billing process.

¶ 24 Thiemann identified the document she prepared regarding the billing issue, which listed the description of the implants used in Morse's surgery, the facility invoice amounts, the amount owed under the fee schedule, the amount Casey's paid and the balance due for each implant (Petitioner's Hearing Exhibit A). Thiemann confirmed that the total amount in dispute was $5206.72. Thiemann explained that Frontenac submitted the New Age Medical invoice to CCMSI with the claim for reimbursement and that Frontenac expected reimbursement of the invoice costs plus 25%. Frontenac did not receive the expected reimbursement because CCMSI decided the implants could be purchased "cheaper somewhere else." According to Thiemann, the Act did not require a provider to purchase the cheapest implants. Thiemann explained that Frontenac

purchased implants from a specific company because the company provided additional items used during surgery, along with backup items that may be necessary during surgery. Thiemann was unsure if Frontenac could purchase implants directly from a manufacturer and doubted a manufacturer would provide backup items. Thiemann had seen similar reductions by Foresight in the past and believed that Frontenac should be paid the additional $5206.72 "to bring the payment up to the Illinois fee schedule." Thiemann was aware of multiple instances where Frontenac received insufficient reimbursement payments in workers' compensation cases, but she did not recall billing the patient for the remaining balance.

¶ 25    On cross-examination, Thiemann identified the claim reimbursement form Frontenac submitted to CCMSI for Morse's surgery (Defendant's Hearing Exhibit 1). She agreed that Frontenac billed CCMSI 200% of the invoice prices. Thiemann acknowledged that Frontenac was only entitled to 125% of the invoice prices listed but stated "[t]hat's why we submit the invoice along with the claim form." Thiemann explained that Frontenac had "an elevated fee schedule because [with] some carriers our contract may pay more than what we actually would get paid by the fee schedule." Thiemann also identified the New Age Medical invoice Frontenac submitted with the claim form in support of the implant charges (Defendant's Hearing Exhibit 2).

¶ 26    Thiemann next identified the explanation of reimbursement Frontenac received from CCMSI (Defendant's Hearing Exhibit 3). Thiemann explained that the payment poster had written notes on the documents. The payment poster noted that the billable implants total was $24,190 but that Frontenac expected a reimbursement of $15,118

12

under the Act, which reflected 125% of the New Age Medical invoice for $12,095. The payment poster further noted that Frontenac was reimbursed $9912.03 for the implants, leaving a balance of $5206.72.

¶ 27    Wheatley then testified to the following as both an adverse witness and witness for Casey's. As materials manager at Foresight, Wheatley reviewed implant charges billed by medical providers and compared those charges to implant invoice prices from the same vendors or manufacturers in the area where a surgery took place. In searching for comparable invoices in the present case, Wheatley discovered that New Age Medical billed Frontenac a substantially higher price for the implants used in Morse's surgery when compared to other New Age Medical invoices for similar implants. The three comparable invoices that were attached to Wheatley's affidavit were submitted into evidence at the hearing. Wheatley admitted, however, that some of the comparable invoices she found listed prices for implants with different measurements than those used in Morse's surgery. Following Wheatley's testimony, the parties presented closing arguments, and the circuit court took the matter under advisement.

¶ 28    On December 27, 2019, the circuit court entered a written order. In the order, the court found that Morse established there were unpaid medical expenses totaling $5206.72. The court also found that "[t]he unpaid medical expenses should have been paid pursuant to the settlement contract because the unpaid balance represents payment for implants (hardware) billed at 25% above the net manufacturer's invoice." The court further found that "[d]emand for payment was made and this action was necessary to enforce the terms of the settlement contract and award." Thus, the court ordered Casey's

13

to pay all outstanding medical bills within 45 days and set the matter for hearing on Morse's request for attorney fees and costs.

¶ 29    On March 16, 2020, following a hearing, the circuit court entered a written order granting Morse's request for attorney fees and costs. The court ordered Casey's to pay $11,650 in attorney fees and $1081.14 in associated court costs. Casey's, through its agent Foresight, now appeals the court's December 27, 2019, order and the court's March 16, 2020, order.

¶ 30                                        II. Analysis

¶ 31    On appeal, Casey's, through its agent Foresight, contends that the circuit court "exceeded the scope of its limited, special jurisdiction" in a section 19(g) proceeding by interpreting section 8.2 of the Act and determining that Casey's owed an additional amount for medical expenses when the settlement agreement approved by the Commission provided that all medical expenses had been paid. Alternatively, Casey's contends that the court incorrectly interpreted and applied the fee schedule set forth in section 8.2 of the Act when it calculated the amount owed. We disagree with both contentions.

¶ 32    "An argument challenging the subject[-]matter jurisdiction of the circuit court presents a question of law that this court will review *de novo*." *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010). Section 19(g) confers authority upon a circuit court to enter a judgment in accordance with an award of the arbitrator or final decision of the Commission and to award attorney fees and costs when an employer refuses to pay an award. *Millennium Knickerbocker Hotel v. Illinois Workers'*

14

*Compensation Comm'n*, 2017 IL App (1st) 161027WC, ¶ 21. The Commission's approval of a settlement agreement is considered a decision of the Commission and, thus, is an award within the meaning of section 19(g). *Ahlers v. Sears, Roebuck Co.*, 73 Ill. 2d 259, 265 (1978). "In a section 19(g) proceeding, the circuit court exercises limited statutory jurisdiction designed to permit the speedy entry of judgment on an award." *Estate of Burns v. Consolidation Coal Co.*, 2015 IL App (5th) 140503, ¶ 19 (citing *Aurora East School District v. Dover*, 363 Ill. App. 3d 1048, 1055 (2006)). "The court's inquiry is limited to a determination of whether the section's requirements have been met, and the court may not review the Commission's decision or otherwise construe the Act, even if the decision appears too large on its face." *Id.* (citing *Aurora East School District*, 363 Ill. App. 3d at 1055). "The only defense to a section 19(g) petition is full payment of the final award." *Dallas v. Ameren CIPS*, 402 Ill. App. 3d 307, 312 (2010) (citing *Aurora East School District*, 363 Ill. App. 3d at 1055).

¶ 33    In the present case, Morse filed a section 19(g) application for entry of judgment in accordance with the settlement agreement approved by the Commission. Morse alleged that the settlement agreement required Casey's to pay all medical expenses in accordance with the fee schedule set forth in section 8.2 of the Act. Morse requested that the circuit court enter judgment against Casey's in the amount of $5206.72, representing the outstanding balance of a medical bill from Frontenac for surgical implants. Casey's agreed that the settlement agreement required it to pay Morse's medical expenses in accordance with the fee schedule but claimed that it had fully reimbursed Frontenac for the implants under the fee schedule with a payment of $9912.03. The parties' dispute did

15

not center on Morse's entitlement to an additional award of medical expenses under the Act. The parties' dispute, instead, centered on whether Casey's tendered full payment of medical expenses awarded to Morse in the settlement agreement—an issue properly before the circuit court in a section 19(g) proceeding. See *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, ¶ 22 (only the circuit court, pursuant to section 19(g) of the Act, has jurisdiction to determine whether an award set forth in the settlement contract had been paid in full).

¶ 34    To resolve this issue, the circuit court had to first determine the amount of medical expenses awarded to Morse in the settlement agreement. While the parties agreed that the settlement agreement required Casey's to pay Morse's medical expenses, the parties disagreed on the amount owed under the agreement. A determination of "whether the Commission's decision leaves room for disagreement over the amount owed and whether the amount has been paid by the employer requires an examination of the settlement itself." *Id.* (citing *Paluch v. United Parcel Service, Inc.*, 2014 IL App (1st) 130621, ¶ 12). "Moreover, where the settlement contract is found to be ambiguous, the circuit court may hold an evidentiary hearing to address the matter." *Id.* (citing *Paluch*, 2014 IL App (1st) 130621, ¶ 22). Thus, the circuit court, here, was required to examine and interpret the parties' settlement agreement to determine the amount owed.

¶ 35    We reject Casey's argument that the circuit court lacked subject-matter jurisdiction to independently determine the amount owed because the settlement agreement "clearly stated that all outstanding medical bills had been paid." It was undisputed that Casey's had not paid the full amount of the medical bill for the implants

16

when it entered into the settlement agreement with Morse. Morse claimed that she believed Casey's had paid all medical bills when she signed the agreement. It also appears that Giffhorn, who represented Casey's in Morse's underlying claim, was unaware of the unpaid medical bill when the settlement agreement was drafted and signed, given his testimony that he proceeded with obtaining approval of the settlement agreement under the assumption that Casey's had paid, or would pay, all outstanding medical bills. Under these circumstances, the court was not required to interpret the settlement agreement in a way that would defeat Morse's section 19(g) application. See *Hagene v. Derek Polling Construction*, 388 Ill. App. 3d 380, 385 (2009) (declining to interpret a nearly identical settlement agreement in a way that would defeat the petitioner's claim where it was clear the agreement was premised on the understanding that the respondent had paid all outstanding medical bills to the date of the agreement).

¶ 36   We also reject Casey's argument that the circuit court lacked subject-matter jurisdiction to determine the amount owed under the settlement agreement because it "was required to both construe the Act and consider matters that were never properly presented to the Commission." We, again, note that neither party raised the issue before the Commission because neither party was aware of the unpaid medical bill when the settlement agreement was presented to the Commission for approval. Because neither party sought review of the Commission's decision approving the agreement, the circuit court had exclusive jurisdiction to resolve the issue. While the settlement agreement did not provide a specific dollar amount of medical expenses, the agreement specified, and the parties agreed, that the amount should be calculated as provided in section 8(a) and

17

the fee schedule set forth in section 8.2 of the Act. The parties further agreed that, pursuant to section 8.2(a-1)(5) of the Act (820 ILCS 305/8.2(a-1)(5) (West 2018)), reimbursement for implants must be 25% above the net manufacturer's invoice price less rebates, plus actual reasonable and customary shipping charges. Under these circumstances, the court did not exceed the scope of its limited jurisdiction by looking to the Act for guidance in calculating the amount owed under the settlement agreement. See *Springfield Urban League v. Illinois Workers' Compensation Comm'n*, 2013 IL App (4th) 120219WC, ¶ 39 (declining to remand to the Commission for a determination of a specific dollar amount owed to the claimant where the Commission's decision ordered the employer to pay medical expenses according to the fee schedule).

¶ 37    Here, both parties presented evidence supporting their respective calculations of the amount owed for the implants under settlement agreement, which incorporated the fee schedule limit for implants. Morse presented evidence showing Frontenac's calculation of the amount owed under the fee schedule. Specifically, evidence showing that Frontenac expected reimbursement at 25% above the New Age Medical invoice of $12,095, which totaled $15,118.75. After applying the $9912.03 reimbursement payment, Frontenac calculated an outstanding balance of $5206.72. Based on this evidence, the circuit court determined that Casey's owed $5206.72 for unpaid medical expenses and, thus, failed to tender full payment of the amount awarded to Morse in the settlement agreement.

¶ 38    In contrast, Casey's presented evidence showing that Frontenac overpaid for the implants used in Morse's surgery. Specifically, Casey's presented comparable invoices,

including an invoice from New Age Medical, that listed lower prices or costs for the same or similar implants. In essence, Casey's sought to challenge the reasonableness or correctness of the amount of medical expenses. In our view, the circuit court correctly discounted this evidence, as Casey's was not permitted to contest the amount of the medical expenses on these grounds in the context of a section 19(g) proceedings. Casey's did not seek to challenge the reasonableness or correctness of the medical bill at issue before the Commission nor did it ask the Commission to calculate the amount owed under the fee schedule. Moreover, Casey's failed to include a provision in the settlement agreement that would have clarified the amount owed for the medical bill under the fee schedule. Thus, Casey's may not now contest the issue by raising it as an affirmative defense to Morse's section 19(g) application. See *Foster v. Mitsubishi Motors North America, Inc.*, 2016 IL App (4th) 160199, ¶ 27; see also *Franz v. McHenry County College*, 222 Ill. App. 3d 1002, 1007 (1991) ("A party cannot sit idly by, permitting an arbitrator's decision to become final, and then assert his claim in a collateral proceeding such as this one.").

¶ 39    In light of the foregoing, we hold that the circuit court did not exceed the scope of its limited statutory jurisdiction by calculating the amount owed for medical expenses under the settlement agreement in determining whether Casey's had tendered full payment of the final award. The court properly interpreted the settlement agreement and considered the evidence in resolving this issue, and we see no reason to disturb its finding that Casey's payment of $9912.03 did not constitute full payment of the medical expenses awarded to Morse under the settlement agreement. Because the record is devoid

of any indication that the court was "improperly influenced by the belief" that Morse would be liable for the unpaid balance of the medical bill, we decline to address Casey's argument in that regard. Therefore, we conclude that the court did not err in entering judgment in favor of Morse in the amount of $5206.72.

¶ 40    Lastly, we note that, although Casey's appealed the circuit court's subsequent order awarding Morse attorney fees and costs, Casey's failed to include sufficient supporting arguments relating to the award of attorney fees and costs in its appellate brief. It appears that Casey's sole argument relating to the award of fees and costs was premised upon success of its jurisdictional argument, which we have rejected. Because Casey's does not raise any additional arguments regarding the award of attorney fees and costs in its appellate brief, we see no reason to disturb the court's award of attorney fees and costs. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 41                              III. Conclusion

¶ 42    For the reasons stated, we affirm the circuit court's orders entering judgment in favor of Morse and awarding Morse attorney fees and costs pursuant to section 19(g) of the Act.


¶ 43    Affirmed.