2023 IL App (1st) 181512-U
No. 1-18-1512

Third Division
February 22, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

| | |
|---|---|
| RALPH SALIER and JANE SALIER HELLENDAY, ) | |
| ) | |
| Plaintiffs-Appellants and Counterdefendants- ) Cross-Appellees, ) | |
| ) | Appeal from the Circuit Court |
| v. ) | of Cook County. |
| ) | |
| DELTA REAL ESTATE INVESTMENTS, LLC; READ ) | No. 14 M1 136788 |
| PARTNERSHIP, a Louisiana General Partnership; A.W. ) | |
| INTERESTS, LLC; and RICDEN, LLC, ) | |
| ) | The Honorable |
| ) | John A. O'Meara and |
| Defendants ) | Daniel P. Duffy, |
| ) | Judges Presiding. |
| ) | |
| (READ Partnership, Defendant-Appellee and ) | |
| Counterplaintiff-Cross-Appellant; A.W. Interests, LLC, ) | |
| and Ricden, LLC, Defendants-Appellees). ) | |

---

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Lampkin and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held:* The circuit court's judgment is affirmed where (1) the circuit court did not err in awarding a landlord damages and attorney fees for its tenants' violation of the Chicago Residential Landlord and Tenant Ordinance, (2) the circuit court did not err in denying damages for the landlord's purportedly improper access to the leased property, (3) the circuit court did not err in granting summary judgment in the landlord's favor on the tenants' claims regarding their security deposit, and (4) the circuit court did not err in denying the application of the collateral source rule.

¶ 2     Ralph Salier-Hellendag (Ralph) and his wife Jane Salier-Hellendag (collectively, the

Saliers)[1] rented a coach house in Chicago (the property) from landlord Delta Real Estate Investments, LLC (Delta), in 2012. The Saliers moved out of the property prior to the expiration of the lease and terminated their gas service, effective mid-December 2013. A water supply pipe in an unheated portion of the property froze and burst, causing significant damage. The Saliers subsequently filed an action in the circuit court of Cook County against Delta, as well as the new owner of the property, READ Partnership and the partnership's two members, A.W. Interests, LLC, and Ricden, LLC (collectively, READ).[2] The complaint alleged violations of the Chicago Residential Landlord and Tenant Ordinance (RLTO), including section 80 (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)), which addresses security deposits. After the claims against Delta were dismissed pursuant to a settlement, READ filed counterclaims against the Saliers based on alleged violations of the lease and the RLTO, including the gas cutoff and resultant damage.

¶ 3    READ filed a motion for summary judgment against the Saliers, which was granted by the trial court in favor of READ on the Saliers' claims under section 80 of the RLTO. Following a bench trial, the trial court (a) entered judgment in favor of READ on the Saliers' claim under section 50 of the RLTO (Chicago Municipal Code § 5-12-050 (amended Nov. 6, 1991)), which addresses a landlord's right of access to the leased premises and (b) ruled in favor of READ on its counterclaims and awarded attorney fees and costs to READ. On appeal, the Saliers contend that the trial court erred in these rulings. In its cross-appeal, READ asserts that the trial court

---

[1] Although various trial court and appellate court filings reference "Jane Salier Hellenday" and "Ralph Salier," Ralph testified during his deposition that his name is "Ralph Salier-Hellendag." For clarity purposes, we refer to the plaintiffs/counter-defendants as the "Saliers."

[2] While "READ" is used herein to refer to the three related defendants, certain pleadings, correspondence, and other matters relate solely to READ Partnership, A.W. Interests, LLC, or Ricden, LLC. Although the three entities are appellees herein, the counterplaintiff on the operative counterclaims —and the sole cross-appellant—is READ Partnership.

erred in finding that the Saliers' noncompliance with section 40 of the RLTO (Chicago

Municipal Code § 5-12-040 (amended June 5, 2013))—which addresses tenant responsibilities—

was not willful. READ further contends that the trial court erred in finding the collateral source

rule to be inapplicable, thus precluding READ from recovering amounts from the Saliers that

had already been paid by READ's insurer. For the reasons discussed herein, we affirm the

judgment of the circuit court in its entirety.

¶ 4                                          BACKGROUND

¶ 5                              The Lease and the Property Sale

¶ 6      In May 2012, the Saliers entered into a written lease with Delta for the property, located

in the 1800 block of West Armitage Avenue in Chicago. The Saliers paid a security deposit of

one month's rent—$2500—and a pet deposit of $500; the lease indicated that the aggregate

amount of $3000[3] would be deposited in Harris Bank. The lease rider provided, in pertinent part,

that the Saliers were responsible for paying their own heating bills. The initial lease term was

from June 1, 2012, to May 31, 2013. The parties signed a one-year extension in May 2013.

¶ 7      In November 2013, Ralph emailed Jordan Feldman, the Delta employee who handled the

day-to-day management of the property. Ralph asked to be released early from the lease because

his mother had fallen ill and he and his wife had found a "less expensive living situation" as they

assisted his mother with her expenses. Although not specifically disclosed to Feldman, the

Saliers had purchased a condominium in Chicago in September 2013. Feldman responded that

the Saliers could not be released but offered to help to sublet or relet the property by listing it

with his broker. Ralph subsequently relayed to Feldman that he and his wife were moving out of

the property on November 26, 2013. The Saliers paid the December rent and paid the gas bill for

_____

[3] Except as otherwise provided herein, we refer to the $2500 and $500 deposits collectively as the
"security deposit."

the property through December 18, 2013.

¶ 8    In the interim, the property was sold, and the lease was assigned to READ on December 3, 2013. READ sent a written notice of the sale and a notice of transfer of the security deposit, which the Saliers apparently did not receive because they had already moved.

¶ 9                              The Burst Pipe

¶ 10    At some point after December 18, 2013, the gas service to the property was terminated. The temperatures in Chicago dropped as low as -1º Fahrenheit on December 23 and then increased to a high of 50º F on December 28. On or about December 29, 2013, a water supply pipe burst, causing damage to the property.

¶ 11    In a letter from their attorney to READ dated December 30, 2013, the Saliers sought various amounts for alleged RLTO violations, including commingling of the security deposit with the rents and failure to pay interest on their security deposit. Claiming that the Saliers were not provided certain documents as required by the RLTO, counsel asserted the Saliers were entitled to terminate the lease unilaterally effective January 1, 2014.

¶ 12    READ responded, in part, that the Saliers violated section 40 of the RLTO (regarding tenant responsibilities) by turning off the heat, which caused the pipe to freeze and later burst. READ asserted that the Saliers "sought to assert technical violations of the ordinance to divert the attention from their own wrongdoing," which had caused $12,000 to $15,000 in damage. Although the Saliers had obtained insurance coverage as required by the lease, they did not make a claim with their insurer for the property damage at that time.

¶ 13                         The Commencement of Litigation

¶ 14    The Saliers filed a complaint at law against Delta and READ alleging multiple RLTO violations in 2014. The claims against Delta were subsequently dismissed with prejudice

pursuant to a settlement. With leave of court, the Saliers filed an amended complaint, alleging READ violated section 80 of the RLTO by, among other things, commingling the security deposit with other amounts, failing to provide the address of the Harris Bank branch where the deposits were held, and failing to pay interest on the deposits. The Saliers sought a total of $9000—*i.e.*, the $3000 security deposit plus two times the deposit as a penalty—and attorney fees. In its answer and affirmative defenses, READ asserted, in part, that the claims were based on acts or omissions by Delta that occurred before the sale of the property to READ. As such, READ contended that such claims were released as part of the Delta settlement and were no longer valid.

¶ 15     READ ultimately filed a two-count second amended counterclaim against the Saliers, alleging that (a) the Saliers breached the lease by cutting off the gas to the property and causing the burst pipe, by failing to pay for gas, and by failing to pay their rent from January through May 2014 (count I) and (b) the Saliers violated the RLTO by, among other things, failing to maintain the property and keep the property safe (count II). After mitigation and credits, READ asserted that the Saliers owed $14,638.67 plus reasonable attorney fees.

¶ 16                                 Summary Judgment

¶ 17     The parties filed cross-motions for summary judgment on the Saliers' amended complaint and READ's second amended counterclaim. In an order entered on January 25, 2017, the circuit court (a) denied the Saliers' motion and granted READ's motion as to the claims in the Saliers' amended complaint and (b) denied the parties' cross-motions as to READ's second amended counterclaim.

¶ 18     With respect to the Saliers' amended complaint, the circuit court found, in part, that READ has satisfied its obligations as a successor landlord under RLTO section 80 regarding

treatment of security deposits. The circuit court observed that any purported RLTO violations related to Delta's conduct, *e.g.*, the failure to provide the address of the Harris Bank branch where the deposits were held, were no longer at issue based on Delta's settlement and dismissal.

¶ 19    The circuit court further found that at least two questions of fact precluded the entry of summary judgment on READ's second amended counterclaim. First, the circuit court found that the application of the collateral source rule depended on "the nature and character of the Saliers' actions relative to the damages at issue." Second, the circuit court observed that, under the common-law doctrine of mitigation of damages, READ's recovery of damages depended, to some extent, on its reasonable care in monitoring the property.

¶ 20                    The Trial and Additional Pleadings

¶ 21    Although the record does not include a complete trial transcript, READ has represented that the bench trial[4] "included multiple days of testimony, continued over the course of 10 weeks, and included additional motions and pleading amendments on both sides."

¶ 22    Over READ's objection, the Saliers were granted leave to file a second amended complaint, asserting that READ violated section 50 of the RLTO when its principal Andrew Wiesemann entered the property on December 19, 2013, and other dates, without providing two days' prior notice. The Saliers sought one month's rent as damages under section 60 of the RLTO (Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991)) plus attorney fees. READ asserted multiple affirmative defenses, including that the Saliers had abandoned the property as of December 19, 2013, that the Saliers suffered no damages due to Wiesemann's entry, and that their claim was barred by the two-year statute of limitations.

¶ 23    READ was granted leave to file a third amended counterclaim, which made minor

---

[4] While Judge Daniel P. Duffy ruled on the summary judgment motions, Judge John A. O'Meara presided over the subsequent trial.

modifications to count I (breach of the lease), *e.g.*, detailing the lease provisions allegedly violated by the Saliers.

¶ 24    With leave of court, the Saliers filed a motion to partially vacate the summary judgment order entered on January 25, 2017. The Saliers asserted that READ had argued that the Saliers were tenants at the time of the property damage in late December 2013 but also inconsistently asserted that they were not tenants on December 19, 2013, when Wiesemann entered the property without providing two days' notice. READ responded, in part, that "nowhere in [READ]'s pleading [is] a claim that the Saliers were not tenants in December 2013."

¶ 25    On August 25, 2017, the trial court (a) entered judgment in favor of READ and against the Saliers jointly and severally in the amount of $2213.40 on count I (breach of the lease) of the third amended counterclaim and ordered that the issue of attorney fees would be decided after the filing of a fee petition, (b) entered judgment in favor of READ and against the Saliers jointly and severally in the amount of $2213.40 on count II of the third amended counterclaim (breach of the RLTO) and found that the Saliers' noncompliance with the RLTO was willful, and (c) entered judgment in favor of READ on the Saliers' claim for unlawful entry under sections 50 and 60 of the RLTO. During its oral ruling, the trial court rejected READ's argument for application of the collateral source rule.

¶ 26                    Posttrial Litigation

¶ 27    READ initially filed a fee petition seeking more than $116,000 in attorney fees and costs. While the fee petition was pending, the Saliers filed a motion for partial reconsideration of the August 25, 2017, order, noting that the trial court stated during its oral ruling stated: "I cannot find in favor of the Saliers at this point because the property was vacant and there was no damage sustained by the Saliers." According to the Saliers, the RLTO does not specifically

require that a tenant suffer damages to recover based on a landlord's unlawful entry. The Saliers subsequently filed a second motion for partial reconsideration, arguing that (a) no evidence was submitted that failure to pay a gas bill was willful and material and (b) READ ignored depreciation factors with respect to their asserted damages. The Saliers also opposed the fee petition, arguing in part that the billing entries were deficient, that the trial court failed to provide a factual basis for the willfulness finding for purposes of a fee award under section 130(b) of the RLTO (Chicago Municipal Code § 5-12-130 (amended Nov. 6, 1991)), and that no fees could be awarded pursuant to RLTO section 180 (Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991)) for *defense* work, since a court may only award fees to the "prevailing plaintiff" under that section.

¶ 28 The trial court denied the Saliers' first motion for partial reconsideration as to the unlawful entry claim. Their second motion was partially denied and partially granted; the trial court found that the Saliers materially breached the RLTO but vacated the prior finding of willfulness. With leave of court, READ filed an amended verified fee petition seeking attorney fees and court costs "necessary for the prosecution of [READ's] claim arising under the Chicago RLTO," in the amount of $59,692.15. Following an evidentiary hearing, the trial court entered a written order on June 15, 2018, awarding $44,309.51 in attorney fees and $349.65 in court costs, pursuant to section 180 of the RLTO.[5] The parties timely filed the instant cross-appeals.

¶ 29 We note that we initially filed an opinion in this matter on September 10, 2020, affirming the trial court's judgment in all respects. The Saliers filed a timely petition for rehearing, and several tenants' rights organizations sought leave to file an *amicus* brief in support of the petition for rehearing. We granted leave to file the *amicus* brief and allowed the petition for rehearing. As

---

[5] Although the trial court incorrectly referenced "Section 5-12-80," the trial court quoted and applied the language of section 180 of the RLTO.

a result, our original decision has been withdrawn and the instant order expands on certain portions of our prior analysis to address issues raised by the parties and by the *amici* in their briefing on the petition for rehearing.

¶ 30                                     ANALYSIS

¶ 31    The numerous arguments advanced by the Saliers on appeal can be distilled into three primary contentions. First, the Saliers argue the trial court erred in awarding damages and attorney fees to READ for their breach of the RLTO. Second, they contend the trial court erred in denying damages for READ's purported violation of section 50 of the RLTO regarding a landlord's access to the leased property. Third, the Saliers assert that the circuit court erred in awarding summary judgment in favor of READ on their claim for violation of the security deposit requirements of RLTO section 80. READ challenges these contentions and argues on cross-appeal that the trial court erred in (a) vacating the willfulness finding on reconsideration and (b) determining the collateral source rule was inapplicable.

¶ 32    Prior to addressing these arguments, we initially note that the Saliers have requested in their reply brief that READ's brief be stricken based on noncompliance with the Illinois Supreme Court rules. Among other things, the Saliers cite various typographical errors, READ's "extensive usage of string citations," and the inclusion of arguments and comments in its statement of facts. Based on our review, we find that any violations here of Illinois Supreme Court Rule 341 (eff. May 25, 2018)—which governs the procedure regarding appellate briefs (*Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 20)—did not impair our review and does not warrant striking READ's brief. See *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297-98 (2010) (choosing to reach the merits of the argument despite the party's disregard of the rules). In fact, it should be noted, the Saliers' unedited statement of facts

and unduly intricate presentation of their arguments, while not preventing our review of the issues, needlessly complicated our consideration of their contentions. See Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018) (requiring the statement of facts to "contain the facts necessary to an understanding of the case"); *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 15 (noting that appellate courts are entitled to have the issues clearly defined). The parties are cautioned that our supreme court rules are not suggestions but rather are mandatory requirements and must be followed. *Northwestern Memorial*, 2014 IL App (1st) 133008, ¶ 20. We now turn to the merits.

¶ 33           The Award of Damages and Attorney Fees for Breach of the RLTO

¶ 34     The Saliers contend that the trial court erred in awarding damages in the amount of $2213.40 and attorney fees in the amount of $44,309.51 to READ on count II of its third amended counterclaim. In count II, READ alleged, in part, that the Saliers violated section 40 of the RLTO (regarding tenant responsibilities) by failing to keep the property safe by cutting off the gas and heat—causing the pipes to freeze and burst—after being informed they would not be allowed to prematurely terminate their lease. We find that the trial court properly awarded damages for the Saliers' breach of section 40. With respect to the award of attorney fees, the Saliers argue, in part, that section 130 of the RLTO requires a finding of willfulness for an award of attorney fees; READ contends that the trial court erred in vacating its earlier finding of willfulness. Since we find the trial court properly awarded attorney fees pursuant to section 180—not section 130—we need not address the parties' contentions regarding willfulness, except as provided below.

¶ 35     First, we are unpersuaded by the Saliers' arguments challenging the award of damages pursuant to section 40. For example, the Saliers contend that the absence of an "express private right of action or an expressed right to damages" in section 40 of the RLTO precludes the award

of damages herein. The trial court, however, entered judgment in READ's favor on *both* its breach of the RLTO *and* breach of contract claim; such ruling is unproblematic in the absence of a double recovery. *E.g.*, *Gehrett v. Chrysler Corp.*, 379 Ill. App. 3d 162, 175 (2008) (noting that "[a]lthough a plaintiff may plead and prove multiple causes of action, there may be only one recovery for an injury"). Furthermore, the sole case cited by the Saliers for this proposition—*Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386 (1999)—is inapposite. The appellate court in *Abbasi* found that it was not necessary to imply a private right of action under the Chicago Municipal Code for lead paint violations because the plaintiff's common-law negligence action constituted an adequate remedy. *Id.* at 396-97. The *Abbasi* court did not contemplate that an injured party would be left without recourse, as the Saliers appear to suggest.

¶ 36　　The Saliers also contend that READ cannot recover damages caused by (a) READ's alleged failure to insulate its own pipe and (b) READ's failure to enroll in a reversion program offered by the gas company, which allows for gas service to be reverted to the landlord's name if the property is vacant between tenants. We observe that the Saliers provide no legal support for these contentions in their initial brief. See *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 (stating that "[a] failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue"). Furthermore, because the Saliers have failed to provide a complete report of the trial court proceedings, we are unable to assess whether the trial court's apparent rejection of the Saliers' contentions regarding the pipe insulation and the gas reversion program was against the manifest weight of the evidence. See Ill. S. Ct. R. 323 (eff. July 1, 2017); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008) (providing that the standard of review in a bench trial is whether the judgment was against the manifest weight of the evidence); *In re Marriage of Gulla*, 234 Ill. 2d 414, 422

(2009) (noting that, without an adequate record preserving the claimed error, the reviewing court must presume that the circuit court's order had a sufficient factual basis and conforms with the law). We similarly reject the Saliers' contention that the termination of gas to the property—in December and in Chicago—did not constitute material noncompliance with the lease and with RLTO section 40(b) regarding tenant responsibilities. See Chicago Municipal Code § 5-12-040(b), (f) (amended June 5, 2013) (requiring a tenant to keep the premises "as safe as the condition of the premises permits" and to not deliberately or negligently damage the premises).

¶ 37    Next, with respect to the issue of attorney fees, the Saliers—and the *amici*—argue that section 130 of the RLTO, not section 180, applies to the award of attorney fees under the circumstances herein. The rules of statutory construction apply to the interpretation of municipal ordinances, such as the RLTO. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008); *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 7 (2009). The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Landis*, 235 Ill. 2d at 6. The best indicator of intent is the statutory language, which must be accorded its plain and ordinary meaning. *Faison v. RTFX, Inc.*, 2014 IL App (1st) 121893, ¶ 29 (citing *Landis*, 235 Ill. 2d at 6-7). The interpretation of the RLTO presents a question of law, which we review *de novo*. *Detrana v. Such*, 368 Ill. App. 3d 861, 867 (2006); see also *Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 1024 (2010) (providing for *de novo* review of an order determining that an attorney fee award was proper). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 20.

¶ 38    Section 130, titled "Landlord remedies," provides in part as follows:

> "Every landlord shall have the remedies specified in this section for the

following circumstances:

     ***

     (b) *Noncompliance by Tenant.* If there is material noncompliance by a tenant with a rental agreement or with Section 5-12-040, the landlord of such tenant's dwelling unit may deliver written notice to the tenant specifying the acts and/or omissions constituting the breach and that the rental agreement will terminate upon a date not less than ten days after receipt of the notice, unless the breach is remedied by the tenant within that period of time. If the breach is not remedied within the 10-day period, the residential rental agreement shall terminate as provided in the notice. The landlord may recover damages and obtain injunctive relief for any material noncompliance by the tenant with the rental agreement or with Section 5-12-040. If the tenant's noncompliance is willful, the landlord may also recover reasonable attorney's fees." (Emphasis in original.)

Chicago Municipal Code § 5-12-130(b) (amended Nov. 6, 1991).

Section 40 of the RLTO, which sets forth tenant responsibilities, provides in part that every tenant must keep the premises safe and not deliberately or negligently damage any part thereof. Chicago Municipal Code § 5-12-040 (amended June 5, 2013).

¶ 39    Section 180—entitled "Attorney's fees"—provides:

     "Except in cases of forcible entry and detainer actions, the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees; provided, however, that nothing herein shall be deemed or interpreted as precluding the awarding of attorney's fees in forcible entry and detainer actions in

accordance with applicable law or as expressly provided in this ordinance." Chicago

Municipal Code § 5-12-180 (added Nov. 6, 1991).

The plain language of section 180 indicates that the provision is applicable herein. First, the

instant case is not a forcible entry and detainer action. See 735 ILCS 5/9-101 *et seq.* (West

2012); *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14 (noting that the

purpose of the Forcible Entry and Detainer Act is "to provide a speedy remedy to allow a person

who is entitled to the possession of certain real property to be restored to possession").

Additionally, with respect to its counterclaim for breach of the RLTO (count II), READ was the

"prevailing plaintiff." *E.g.*, *Shadid v. Sims*, 2015 IL App (1st) 141973, ¶ 8 (finding that the term

"plaintiff" in section 180 must be interpreted to include counterplaintiffs). Thus, (1) READ was

the prevailing plaintiff in an action arising out of the rights or remedies made available in the

RLTO and (2) the case was not a forcible entry and detainer action. Under the plain terms of

section 180, then, READ was entitled to reasonable attorney fees.

¶ 40    The Saliers and the *amici*, however, contend that section 180 is not applicable to

breaches of section 40 and that, instead, the sole remedy for a landlord is contained in section

130.[6] Indeed, the *amicus* brief goes so far as to suggest that section 180 is available only to

tenants and not to landlords at all. We flatly reject such a suggestion, as it has no basis in the

language of the RLTO or in any case law. As noted, the language of section 180 provides that

"the prevailing *plaintiff* in any action arising out of a landlord's or tenant's application of the

rights or remedies made available in this ordinance" is entitled to attorney fees—not the

---

[6] We note that the *amicus* brief misrepresents our prior decision as holding that the RLTO requires a landlord "to be awarded [attorney] fees in any claim against a tenant arising from a violation of Section 5-12-040 or the parties' lease." Our opinion, however, considered only the availability of attorney fees in a cause of action arising from the RLTO, not from a breach of the lease. As section 180 applies only to causes of action arising from the RLTO, such a distinction is a critical one.

prevailing *tenant*. (Emphasis added.) Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991). Section 180 is also expressly applicable to "any action arising out of *a landlord's or tenant's* application" of the rights or remedies made available in the RLTO, not simply to a tenant's, meaning that it contemplates the landlord being in the position of the plaintiff in such an action. (Emphasis added.) *Id.*

¶ 41    Additionally, the use of section 180 by a landlord has been considered several times by our courts, both in published and unpublished decisions. While recovery of such fees has generally been denied, we have discovered no case in which the denial was based on the landlord's status as a landlord—instead, the denial has been based on finding that the landlord was not a prevailing plaintiff or was seeking attorney fees for a claim not covered by section 180. See, *e.g.*, *Willis v. Naico Real Estate Property & Management Corp.*, 379 Ill. App. 3d 486, 490 (2008) (denying fees where landlord's claim was based on a provision of the lease, not the RLTO); *Benford v. Everett Commons, LLC*, 2014 IL App (1st) 131231, ¶ 20 (denying fees where landlord was not a prevailing plaintiff as it did not file a counterclaim but only filed affirmative defenses); *Meyer v. Cohen*, 260 Ill. App. 3d 351, 363-64 (1993) (denying fees to prevailing landlord where the lease at issue was entered into prior to the enactment of section 180).[7] In no such case has any court raised any doubts about the applicability of section 180 to landlords more generally. Indeed, in *Meyer*, this court noted that section 180 was a "blanket attorney fees section awarding them to *any* prevailing party under the ordinance," with the exception of forcible entry and detainer cases. (Emphasis added.) *Meyer*, 260 Ill. App. 3d at 363.

---

[7] While we do not cite them as any kind of authority as they were all issued prior to 2021, we note that there have also been a number of unpublished decisions following the same reasoning. See, *e.g.*, *MFG Properties, LLC v. Dubose*, 2019 IL App (1st) 181920-U; *Ferrell v. 1513 N. Western Ave., LLC*, 2012 IL App (1st) 110857-U; *Chhabria Family Limited Partnership v. Mason*, 2017 IL App (1st) 153009-U; *White v. Kocmond*, 2018 IL App (1st) 170878-U.

¶ 42    The fact-specific nature of such decisions can be seen most clearly in the case of *VG Marina Management Corp. v. Wiener*, 371 Ill. App. 3d 201, 205-06 (2007), in which the Second District originally found that a landlord was entitled to attorney fees for an action seeking rent under section 130(a). The dissent in that case, however, argued that the landlord did not bring a claim under section 130(a) but raised only a claim under the lease agreement. *Id.* at 209 (O'Malley, J., dissenting). In a supervisory order, the supreme court ordered the appellate court to vacate its judgment and order supplemental briefing on the applicability of section 130(a), which it did. Upon remand, the landlord expressly declined to adopt the prior decision's reasoning and instead argued that section 130(a) was *not* applicable to its case but that its claim was based solely on violation of the lease agreement. *VG Marina Management Corp. v. Wiener*, 378 Ill. App. 3d 887, 893 (2008). Based on that representation, the appellate court found that there was no basis for an award of attorney fees as the landlord did not seek to invoke a remedy under the RLTO. *Id.* We note, however, that the appellate court emphasized that "this conclusion is predicated upon plaintiff's characterization of its own pleading and is not based upon our own analysis and construction of the RLTO." *Id. VG Marina*, then, provides a helpful illustration: where the claim is based on the RLTO, a landlord may seek attorney fees under section 180 where applicable, but where the claim is not one falling under the terms of section 180, the landlord may not seek attorney fees under that section. This is entirely consistent with prior case law, as well as our reading of section 180. The *amicus* brief's suggestion otherwise, then, is unpersuasive and we decline to adopt its interpretation of section 180 as applying only to tenants.

¶ 43    We are similarly unpersuaded by the claim that the trial court erred in relying on section 180, rather than section 130, in awarding READ attorney fees. As an initial matter, the Saliers contend that the trial court erred in "ignoring" section 130 and granting fees under section 180.

We note, however, that both sections 130 and 180 were discussed during the trial court's oral ruling on August 25, 2017, thus strongly indicating that the trial court did not "ignore" the former section.

¶ 44    We further observe that, while both the Saliers and the *amici* claim that READ's action was encompassed by section 130(b), the relief described in section 130(b) arguably applies solely to the scenario described therein, *i.e.*, the termination of a residential rental agreement after the tenant's failure to remedy a breach within a 10-day period after receipt of notice. Chicago Municipal Code § 5-12-130 (amended Nov. 6, 1991) (providing that "[e]very landlord shall have the remedies specified in this section *for the following circumstances*" (emphasis added)). The termination of the lease gives rise to a claim for possession, *i.e.*, a forcible entry and detainer action. Chicago Municipal Code § 5-12-130(h) (amended Nov. 6, 1991). The claim raised by READ, however, did not seek termination of the lease or possession of the property— the Saliers had long left the property by the time of READ's counterclaim. Accordingly, section 130(b) would be inapplicable to READ's claim.

¶ 45    We are thus unmoved by the Saliers' suggestion that the court erred in granting fees under section 180—which they claim is the "more general provision"—as opposed to section 130. Where the text of a statute is clear and unambiguous, as is the case herein, we need not resort to canons of statutory construction (*Department of Transportation v. Singh*, 393 Ill. App. 3d 458, 465 (2009)), *e.g.*, the principle that if there is a conflict between a general and a specific provision, the specific provision prevails. There simply is no conflict here: the attorney fees provision of section 130(b) applies to forcible entry and detainer actions, while section 180 applies to other actions arising from the rights and remedies made available in the RLTO. We are similarly unpersuaded by the Saliers' contentions regarding the RLTO's legislative history and

its differences from the Uniform Residential Landlord and Tenant Act. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006) (when the statutory language is clear, "it must be applied as written without resort to aids or tools of interpretation"). We recognize that the RLTO was passed with a recognition of the historical disparity of bargaining positions between landlords and tenants, and its fee-shifting provisions serve to provide a financial incentive to attorneys to litigate on behalf of clients where it otherwise might not be financially feasible. See *Pitts v. Holt*, 304 Ill. App. 3d 871, 873 (1999). The fact remains, however, that the express terms of section 180 are clear and unambiguous, and we may not ignore them.[8]

¶ 46    Section 180 provides, in part, that "nothing herein shall be deemed or interpreted as precluding the awarding of attorney's fees in forcible entry and detainer actions in accordance with applicable law or as expressly provided in this ordinance." Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991). If READ had asserted its RLTO claim in the context of a forcible entry and detainer action, then READ potentially could invoke section 130 to recover on its attorney fee claim. The interpretation of section 180 adopted by the trial court does not render the language of section 130 superfluous, as the Saliers suggest. *E.g.*, *Merritt v. Department of State Police*, 2016 IL App (4th) 150661, ¶ 20 (noting that courts are to read statutory provisions "in concert and harmonize them, avoiding an interpretation rendering part of the statute

---

[8] The *amicus* brief's suggestion that our supreme court's decision in *Krautsack v. Anderson*, 223 Ill. 2d 541 (2006), permits us to impose additional requirements on section 180 is unpersuasive. *Krautsack* involved attorney fees permitted under the Consumer Fraud Act, which provided that a trial court " 'may' " award reasonable attorney fees to the prevailing party. *Id*. at 553-54 (quoting 815 ILCS 505/10a(c) (West 2004)). In determining whether a trial court should award such fees to a prevailing defendant, the supreme court looked to the statute's purpose in finding the imposition of a bad-faith requirement to be appropriate. *Id.* at 559. This is significantly different from section 180, which provides that a "prevailing plaintiff" "shall" be entitled to such fees. Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991). See also *Krautsack*, 223 Ill. 2d at 559 (noting that a prevailing plaintiff has already proven the defendant liable, while a prevailing defendant has not necessarily established anything more than that the plaintiff's suit was unsuccessful).

superfluous"). We similarly cannot agree with the *amici* that allowing fees under section 180 conflicts with section 140(f), which prohibits lease agreements from including fee-shifting provisions "except as provided for by court rules, statute, or ordinance." Chicago Municipal Code § 5-12-140(f) (amended Nov. 6, 1991). As they acknowledge, section 140(f) expressly permits fee-shifting where provided by statute or ordinance, as is the case with section 180. We further note that section 180 does not provide "for landlord fee shifting in any conceivable claim asserted by the landlord under the lease or ordinance" such that section 140(f) loses all meaning, as the *amici* claim. As we have explained, section 180 has specific requirements and permits attorney fees only if such requirements are satisfied. We therefore can find no error in the trial court's decision to award attorney fees in this case.

¶ 47    The Saliers further assert that the trial court erred in the amount of attorney fees awarded. According to the Saliers, (a) a 25% reduction employed by the trial court was misapplied, (b) READ's attorneys were awarded fees relating to motions and legal arguments which were untimely and/or unsuccessful, (c) the legal research time was excessive given the experience level of counsel, and (d) it was unnecessary for two attorneys representing READ to appear in court on this matter. While we review *de novo* whether an award of attorney fees was proper under the RLTO, we review the final fee award for an abuse of discretion. See *Shoreline Towers Condominium Ass'n*, 404 Ill. App. 3d at 1024; see also *Collins v. Noltensmeier*, 2018 IL App (4th) 170443, ¶ 41 (stating that the trial court's decision in awarding statutory attorney fees will not be reversed absent an abuse of discretion). "Accordingly, we will reverse the amount of attorney fees only if no reasonable person would make the same decision as the trial court." *Shoreline Towers Condominium Ass'n*, 404 Ill. App. 3d at 1024.

¶ 48    The final order on attorney fees and costs expressly states the circuit court conducted an

evidentiary hearing wherein the attorneys for both parties testified. The record on appeal, however, does not include the transcript or other report of proceedings for this hearing. See Ill. S. Ct. R. 323 (eff. July 1, 2017). As the appellants on this issue, the Saliers have the burden to present a sufficiently complete record, and any doubts arising from the completeness of the record will be resolved against them. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a complete record of the proceedings on the fee petition, we will presume that the trial court's order conformed with the law and had an adequate factual basis. *Id.* at 392.

¶ 49    Even if we were to consider the description of the proceedings in the trial court's fee order and other documents in the record to provide a sufficient basis for our review, we would conclude that the trial court did not abuse its discretion in its award and calculation of attorney fees and costs. The trial court expressly noted the considerable length of the trial and the complexity of the issues addressed therein and appears to have thoroughly reviewed counsel's time entries and reduced the billed amounts in an appropriate fashion. *E.g.*, *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 595 (2000) (discussing the "broad discretionary powers" of the trial court in ruling on a fee petition and noting that "the trial judge's familiarity with the underlying litigation allows him to independently assess the necessity and reasonableness of the legal services rendered").

¶ 50    For the foregoing reasons, we affirm the judgment of the trial court as to the award of damages and attorney fees to READ for the Saliers' breach of the RLTO and the lease. We next consider the trial court's ruling regarding the Saliers' claim under sections 50 and 60 of the RLTO, which address the landlord's entry into the property without notice.

¶ 51                                  Entry Without Notice by Landlord

¶ 52    The Saliers contend that the trial court erred by failing to award them any damages for

READ's alleged violation of section 50 of the RLTO. Specifically, the Saliers assert that READ admitted that Wiesemann entered the property on December 19, 2013, without providing notice.

¶ 53 Section 50 provides, in part, that except under certain limited circumstances, a landlord "shall give the tenant notice of the landlord's intent to enter of no less than two days." Chicago Municipal Code § 5-12-050 (amended Nov. 6, 1991). Section 60 of the RLTO provides, in part, that if the landlord makes an unlawful entry, the tenant may obtain injunctive relief to prevent the recurrence of the conduct or terminate the rental agreement as provided in another RLTO provision. Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991). Section 60 further states that, "[i]n each case, the tenant *may recover* an amount equal to not more than one month's rent or twice the damage sustained by him, whichever is greater." (Emphasis added.) Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991). In its oral ruling after the bench trial, the trial court stated it could not find in favor of the Saliers, as the property was vacant and the couple did not incur damage.

¶ 54 The Saliers contend that a violation of section 50 compels an award under section 60. To the extent this issue requires an interpretation of the RLTO, our review is *de novo*. See *Detrana*, 368 Ill. App. 3d at 867. Section 60 of the RLTO provides that the tenant "may recover" certain amounts for violation of section 50. Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991). "Except in very unusual circumstances affecting the public interest, the legislative use of the word 'may' is permissive rather than mandatory." *In re Marriage of Freeman*, 106 Ill. 2d 290, 298 (1985); see also *Hampton v. Village of Washburn*, 317 Ill. App. 3d 439, 443 (2000) (noting that the use of the word "may" in a statute generally suggests a permissive rather than a mandatory reading). The Saliers accurately observe that the RLTO is intended to protect tenants and its " 'purpose is rooted in the public policy that recognizes that tenants are in a

disadvantageous position with respect to landlords.' " *Shadid*, 2015 IL App (1st) 141973, ¶ 7

(quoting *Lawrence v. Regent Realty Group, Inc.*, 307 Ill. App. 3d 155, 160 (1999), *aff'd*, 197 Ill.

2d 1 (2001)). While we acknowledge the important purpose of the ordinance, we cannot

conclude that section 60 involves the "very unusual circumstances" required to read its

language—"may recover"—as *mandating* recovery for the Saliers. The criminal cases cited by

the Saliers are inapposite; both involve the interpretation of the word "shall" in statutes requiring

the court or the court clerk to take certain actions vis-à-vis a defendant. *People v. Delvillar*, 235

Ill. 2d 507, 513 (2009); *People v. Robinson*, 217 Ill. 2d 43, 50 (2005).

¶ 55    The standard of review in a bench trial is whether the judgment is against the manifest

weight of the evidence. *Chicago's Pizza*, 384 Ill. App. 3d at 859. A decision is against the

manifest weight of the evidence only when an opposite conclusion is apparent or when the

findings appear to be arbitrary, unreasonable, or not based on the evidence. *Eychaner v. Gross*,

202 Ill. 2d 228, 252 (2002). While we have Wiesemann's affidavit, the appellate record does not

include his trial testimony. *Foutch*, 99 Ill. 2d at 391-92 (noting that the appellant has the burden

of presenting a complete record). Ralph testified at trial that he and his wife had moved from the

property as of Wiesemann's entry thereon on December 19, 2013, and that they sustained no

damages due to the entry. Under the circumstances of this case, we cannot find that the court's

decision to deny an award under section 60 was against the manifest weight of the evidence,

particularly where we have been provided an incomplete record.

¶ 56                          Treatment of the Security Deposit

¶ 57    The circuit court granted READ's motion for summary judgment and denied the Saliers'

motion for summary judgment with respect to the Saliers' claims pursuant to section 80 of the

RLTO (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)), which addresses security

deposits. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). "The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. When parties file cross-motions for summary judgment, they agree that only a legal question is involved and invite the court to decide the issues based upon the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review the circuit court's summary judgment ruling *de novo*. *Monson*, 2018 IL 122486, ¶ 12. On appeal, the Saliers challenge the circuit court's ruling on multiple grounds.

¶ 58    The Saliers initially assert that READ's counsel "inserted the security deposit monies into his IOLTA [(Interest on Lawyer Trust Accounts)] account some three days after the closing" of the sale of the property from Delta to READ on December 3, 2013, and that "he kept those funds throughout the litigation." This contention is inaccurate. In his affidavit, Wiesemann averred that the security deposit funds were paid to READ's law firm's segregated account at the closing. On December 5, 2013, the funds totaling $3001.94 were deposited into a "tenant lease security account" for Jane Salier-Hellendag at Chase Bank (Chase), as reflected in a bank statement in the record.[9] Simply put, there is no indication that READ's attorney "kept those funds."

¶ 59    The Saliers also suggest that the period of approximately 48 hours during which the funds were deposited in READ's attorney's IOLTA account violated section 80 of the RLTO and was otherwise improper. As discussed below, we disagree.

¶ 60    Rule 1.15(a) of the Illinois Rules of Professional Conduct of 2010 requires an attorney to hold property of clients or third persons separate from the attorney's own property. Ill. R. Prof'l

---

[9] READ's counsel averred that Ralph's name could not be placed on the account because his Social Security number had not been provided.

Conduct (2010) R. 1.15(a) (eff. Sept. 1, 2011). An IOLTA account should hold all client or third-party funds that are "nominal in amount or are expected to be held for a short period of time." Ill. R. Prof'l Conduct (2010) R. 1.15(f) (eff. Sept. 1, 2011); *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 27.

¶ 61    The Saliers contend that, "without the tenant's informed consent, the Illinois Professional Rules prohibit the lawyer from even inserting the security deposit and interest into his IOLTA account." The Saliers misread Rule 1.15(a). The rule provides, in pertinent part: "Funds shall be deposited in one or more separate and identifiable interest- or dividend-bearing client trust accounts maintained at an eligible financial institution in the state where the lawyer's office is situated, *or elsewhere with the informed consent of the client or third person*." (Emphasis added.) Ill. R. Prof'l Conduct (2010) R. 1.15(a) (eff. Sept. 1, 2011). " 'Eligible financial institution' " is defined in the rule to include a bank or a savings bank insured by the Federal Deposit Insurance Corporation (FDIC). Ill. R. Prof'l Conduct (2010) R. 1.15(i)(3) (eff. Sept. 1, 2011).[10] As the Saliers have not alleged that the funds were deposited anywhere other than an account maintained at an FDIC-insured bank in Illinois—*i.e.*, Chase—the "informed consent" requirement was inapplicable.

¶ 62    The Saliers further suggest that they were improperly denied the interest on their security deposit during the 48-hour period that the funds were in the IOLTA account. See Ill. R. Prof'l Conduct (2010) R. 1.15(f)(5) (eff. Sept. 1, 2011) (addressing the remittance of monthly earnings on an IOLTA account to the Lawyers Trust Fund of Illinois). While we recognize that a landlord's duty to comply with section 80 of the RLTO is absolute (*Lawrence v. Regent Realty*

---

[10] As part of the changes to Rule 1.15 effective July 1, 2015, the definitions section was moved from subsection (i) to subsection (j). See Ill. R. Prof'l Conduct (2010) R. 1.15 (eff. July 1, 2015). Since the relevant events vis-à-vis the security deposit occurred in 2013, we cite the paragraph numbers in effect at that time.

*Group, Inc.*, 197 Ill. 2d 1, 9-10 (2001)), the provisions of the Illinois Rules of Professional

Conduct of 2010 regarding safekeeping property clearly contemplate this very scenario, where

funds must be temporarily held until an appropriate separate account can be opened. *E.g.*, Ill. R.

Prof'l Conduct (2010) R. 1.15(g) (eff. Sept. 1, 2011) (noting that "[a] lawyer or law firm should

exercise reasonable judgment in determining whether funds of a client or third person are ***

expected to be held for a short period of time"). We view the two day period at issue herein as

reasonable.

¶ 63    The Saliers also argue that alleged deficiencies in READ's "Notice of Transfer of

Security Deposit" constitute violations of section 80 of the RLTO. Section 80(e) provides, in

part, that if a landlord sells the leased property, the successor landlord is liable for the security

deposit (including interest) and "[t]he successor landlord shall, within 14 days from the date of

such transfer, notify the tenant who made such security deposit by delivering or mailing to the

tenant's last known address that such security deposit was transferred to the successor landlord

and that the successor landlord is holding said security deposit." Chicago Municipal Code § 5-

12-080(e) (amended July 28, 2010). READ timely transmitted the required written notice to the

Saliers at the property address by both certified and priority mail on December 12, 2013; a

paralegal at the law firm representing READ averred that the certified mail "came back

undelivered" and the priority mail was not returned to the firm.

¶ 64    Although the notice indicated that their security deposit was placed into an account at

"Chase Bank, Chicago, Illinois," the Saliers suggest that READ was required to provide the

address of a particular branch where the funds were deposited, pursuant to section 80(a) of the

RLTO. Chicago Municipal Code § 5-12-080(a) (amended July 28, 2010). According to the

Saliers, the circuit court erred in "ruling that only that the original landlord had an obligation to

provide the name and address of the bank to the tenants." Such issue, however, was neither raised by the Saliers in their amended complaint nor specifically addressed by the court. The amended complaint alleged, in pertinent part, that READ failed to disclose the address of the *Harris Bank* location where the $3000 amount was initially on deposit. The circuit court subsequently found that the allegations concerning the failure of *Delta* to disclose the specific address of the Harris Bank branch at which the security deposit was originally held "are no longer at issue by virtue of the settlement and subsequent dismissal of Delta." We thus reject the Saliers' challenges regarding the alleged failure of READ to disclose the Chase branch address. *E.g.*, *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500 (1985) (noting that "[i]t is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal").

¶ 65    Since the notice sent by READ referenced incorrect amounts—*e.g.*, an original security deposit amount of $3300 rather than $3000[11]—the Saliers also contend that "clearly the additional $300 which did not belong to the tenants was commingled," in violation of section 80(a) of the RLTO, which prohibits the commingling of a tenant's security deposit with the landlord's assets. See Chicago Municipal Code § 5-12-080(a) (amended July 28, 2010). We are unpersuaded by this argument. The Saliers cite no legal support for this contention. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). They do not contend that an incorrect amount was deposited in the Chase account and, in fact, the Chase bank statement apparently reflects the correct amount. In any event, as the Saliers admittedly did not receive the notice, this typographical error is of minimal import. Most significantly, the record does not include any factual basis for the Saliers'

_____

[11] Based on our review of the record, it appears that READ inadvertently referenced the security deposit amount for another tenant in the three-unit main building—which was also part of the sale to READ—rather than the Saliers' security deposit related to their tenancy in the coach house.

assertion that a $300 amount was commingled with their funds. See *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999) (noting that "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment").

¶ 66    Finally, the Saliers contend that READ violated section 80(d) of the RLTO (Chicago Municipal Code § 5-12-080(d) (amended July 28, 2010)) by not providing notice of READ's deductions from the security deposit within 45 days after the Saliers vacated the property. The evidence in the limited record suggests that READ was unaware that the Saliers had vacated the property until some point in December 2013. In correspondence from READ's counsel to the Saliers' counsel dated January 14, 2014—within 45 days of learning of the Saliers' premature departure—READ's counsel relayed that the estimated cost to restore the property was between $12,000 and $15,000 "and could end up being higher." Given the significant repair costs for the property damage, the Saliers were plainly notified that their $3000 security deposit was not being returned. Under these circumstances, we are unmoved by the Saliers' contentions regarding section 80(d) of the RLTO.

¶ 67    For the foregoing reasons, we affirm the denial of the Saliers' motion for summary judgment and the grant of READ's motion for summary judgment with respect to the Saliers' claims pursuant to section 80 of the RLTO.

¶ 68                              Collateral Source Rule

¶ 69    In its cross-appeal, READ contends that the trial court erred in denying application of the collateral source rule. "Under the collateral source rule, benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *Wilson v. Hoffman Group, Inc.*, 131 Ill. 2d 308, 320 (1989). A situation in which courts often apply the collateral source rule is where the defendant

seeks a reduction in damages because the plaintiff received insurance benefits that wholly or partially indemnify the plaintiff for the loss. *Id.*; accord *Otto Baum Co. v. Süd Family Ltd. Partnership*, 2020 IL App (3d) 190054, ¶ 24 (noting that "[t]he rule is frequently applied when the injured party has been indemnified for the loss by proceeds from his own insurance"). "The justification for this rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons." *Wilson*, 131 Ill. 2d at 320. READ contends that the trial court erroneously reduced its recovery by the amount received from its own insurer.

¶ 70    The collateral source rule generally applies in tort cases; the rule applies in contract cases only where there is an element of fraud, tort, or willful and wanton conduct. *Otto Baum Co.*, 2020 IL App (3d) 190054, ¶ 26; *American Fidelity Fire Insurance Co. v. General Ry. Signal Co.*, 184 Ill. App. 3d 601, 617 (1989) (providing that the rule applies in contract cases "only where there is an element of fraud, tort, or willfulness"). But see *Morse v. Donati*, 2019 IL App (2d) 180328, ¶ 28 n.2 (opining that *American Fidelity*, 184 Ill. App. 3d at 617, may no longer be good law "[t]o the extent that the court might have implied that willfulness is relevant to a breach of contract"). In the operative counterclaims, READ alleged that the Saliers breached their contract, *i.e.*, the lease. READ further alleged that the Saliers engaged in willful conduct. When ruling on the motion for reconsideration filed by the Saliers, the trial court vacated its prior finding of willfulness.

¶ 71    As noted above, the standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence. *Chicago's Pizza*, 384 Ill. App. 3d at 859. READ contends, however, that a *de novo* standard of review applies to the extent that the trial court vacated its willfulness finding based on the Saliers' argument raised in their motion for reconsideration that

the court had misapplied existing law. We disagree. We recognize that "our standard of review looks for an abuse of discretion in the granting of [the party's] motion for reconsideration, but under the rubric of 'abuse of discretion,' we will apply other standards of review, depending on whether the underlying issue is factual or legal." *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 24. Unlike in the cases cited by READ, however, the question of whether conduct is willful is not a purely legal determination. *E.g.*, *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App (1st) 111296, ¶ 16 (applying *de novo* review to the trial court's ruling on reconsideration as to whether a party had made judicial admissions); see also *Illinois Central R.R. Co. v. Leiner*, 202 Ill. 624, 629-30 (1903) (describing the question of whether a personal injury has been inflicted by willful or wanton conduct or gross negligence as a question of fact). Indeed, READ's extensive reliance on Ralph's trial testimony regarding his own conduct belies its suggestion that this is strictly a legal issue.

¶ 72 READ, as the cross-appellant, bears the burden of providing a sufficiently complete record to allow for meaningful appellate review of its claim. *Johnson v. Johnson*, 386 Ill. App. 3d 522, 554 (2008). READ argues on appeal that the Saliers' conduct, *e.g.*, cutting off the gas, was willful. According to READ, the Saliers' conduct was also tortious, as the freezing of the pipe caused property damage. READ further contends there was an element of fraud, *e.g.*, the couple's concealment of their condominium purchase and their allegedly unsupported claim that they needed to be released from the lease to provide financial assistance to Ralph's mother.

¶ 73 Although the record on appeal includes Ralph's trial testimony, in the absence of a *complete* trial transcript or other report of proceedings (see Ill. S. Ct. R. 323 (eff. July 1, 2017)), we are unable to meaningfully review READ's claim that the trial court erred in vacating its finding of willfulness and denying application of the collateral source rule. See *Johnson*, 386 Ill.

App. 3d at 554 (noting that, in the absence of an adequate record, we presume that the court's order was supported by a sufficient factual basis and was entered in conformity with the law). Even assuming the state of the current record does not preclude our effective review, we defer to the trial court's assessment of Ralph's testimony and the other evidence presented. See *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006) (noting that we will not substitute our judgment for that of the trial court regarding the credibility of witnesses, the weight to be given the evidence, or the inferences to be drawn). We thus affirm the trial court's decision vacating its prior finding of willfulness and otherwise denying application of the collateral source rule.

¶ 74                                    CONCLUSION

¶ 75    For the reasons stated above, the judgment of the circuit court of Cook County is hereby affirmed in its entirety.

¶ 76    Affirmed.